## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MONIFA PATTERSON,

                  Plaintiff,

      v.

KILOLO KIJAKAZI,

                Defendant.[1]

CIVIL ACTION NO. 3:20-CV-01662

(MEHALCHICK, M.J.)

### MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Monifa Patterson ("Patterson")'s claims for a period of disability and supplemental security income ("SSI") under Title XVI of the Social Security Act. (Doc. 1). The matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be affirmed.

### I.    BACKGROUND AND PROCEDURAL HISTORY

On October 28, 2014, Plaintiff Patterson filed applications for Title XVI benefits. (Doc. 15-6, at 2). In this application, Patterson claimed disability beginning on March 20, 2013.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Doc. 15-6, at 2). Patterson's claims were initially denied by the Social Security Administration on April 13, 2015. (Doc. 15-5, at 5). Patterson filed a request for a hearing before an Administrative Law Judge ("ALJ") on April 27, 2015. (Doc. 15-5, at 9). The hearing was held on January 26, 2017, before ALJ Jarrod Tranguch. (Doc. 15-3, at 52).

In a written opinion dated June 28, 2017, ALJ Tranguch determined that Patterson was not disabled and therefore not entitled to the benefits sought. (Doc. 15-4, at 31-41). Patterson appealed the decision of ALJ Tranguch to the Appeals Council, raising a challenge under the Appointments Clause of the Constitution, U.S. Const. Article II, § 2, Clause 2, to the manner in which ALJ Tranguch was appointed, in addressing this challenge. (Doc. 15-2, at 18). On September 11, 2018, the Appeals Council remanded this case without addressing this challenge. (Doc. 15-4, at 47-48). As such, the Council vacated its remand order on September 18, 2018, so that it could address the Appointments Clause issue. In order for jurisdiction to be granted back to the Appeals Council, ALJ Tranguch issued a dismissal order on September 26, 2018. (Doc. 15-4, at 48).

In its remand order, issued on July 8, 2019, the Appeals Council directed ALJ Wing to further evaluate the mental residual functional capacity ("RFC"), as the prior ALJ found that Patterson had severe mental impairment that limits her to low stress jobs, however, he did not define "low stress" in the RFC assessment. (Doc. 15-4, at 47). Additionally, ALJ Wing was directed to obtain additional evidence concerning Patterson's impairments, further evaluate Patterson's mental impairment in accordance with the special technique described in 20 C.F.R. 416.920a and 416.920a(c), as well as give further consideration to Patterson's maximum RFC during the entire period at issue, and provide rationale in support of all assessed limitations. (Doc. 15-4, at 47). Lastly, ALJ Wing was directed to obtain

supplemental evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Patterson's occupational base. (Doc. 15-4, at 47).

In a written opinion dated December 19, 2019, ALJ Timothy Wing determined that Patterson was not disabled, as defined in the Social Security Act, and therefore not entitled to the benefits sought. (Doc. 15-4, at 31-41). Patterson appealed the decision of ALJ Wing to the Appeals Council, who, on February 6, 2020, denied Patterson's request for review. (Doc. 15-2, at 2). On September 11, 2020, Patterson filed the instant action. (Doc. 1). The Commissioner responded on April 9, 2021, providing the requisite transcripts from the disability proceedings. (Doc. 14; Doc. 15). The parties then filed their respective briefs, with Patterson alleging three errors warrant reversal or remand. (Doc. 21; Doc. 26; Doc. 33).

II.    **STANDARDS OF REVIEW**

To receive benefits under Titles XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).[2]

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.912(a)(1).

B. JUDICIAL REVIEW

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decision maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Patterson was disabled, but whether the Commissioner's determination that Patterson was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In a decision dated December 19, 2019, the ALJ determined Patterson "has not been under a disability, as defined in the Social Security Act, since July 16, 2014, through the date the application was filed." (Doc. 15-2, at 30). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 220 C.F.R. § 416.920(a).

A.   **STEP ONE**

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974. The ALJ determined Patterson "has not engaged in [SGA] since July 16, 2014, the application date." (Doc. 15-2, at 21). Thus, the ALJ's analysis proceeded to step two.

B.   **STEP TWO**

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the

third step. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "bipolar disorder, personality disorder, major depressive disorder, generalized anxiety disorder, and substance use disorder." (Doc. 15-2, at 21). The ALJ also noted non-severe impairments of: "allergic rhinitis, obesity, and history of unspecified sciatica." (Doc. 15-2, at 21).

### C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. (20 C.F.R. §§ 416.920(a)(4)(iii), 416.925, 416.926). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 416.920(d). The ALJ considered listings 12.04 (depressive, bipolar and related disorders); 12.06 (anxiety and obsessive-compulsive disorders); and 12.08 (personality and impulse-control disorders). (Doc. 15-2, at 22). The ALJ determined that none of Patterson's impairments, considered individually or in combination, met or equaled the criteria of listings in the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Doc. 15-2, at 21).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they]

can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 416.929(b)-(c).

Patterson alleged that her impairments caused the following symptoms: inability to work due to bipolar disorder, auditory hallucinations, and a limited education; difficulty understanding and concentrating; paranoia; hearing voices; and short-term memory problems. (Doc. 15-2, at 25). After examining her statements and the medical evidence, the ALJ found that Patterson's impairments could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 15-2, at 25).

Considering all evidence in the record, the ALJ determined that, during the relevant period, Patterson had the RFC "to perform a full range of work at all exertional levels," subject to the following non-exertional limitations:

> [Patterson] is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast paced production environment, involving only simple, work related decisions, and in general, relatively few work place changes. [Patterson] is limited to occupations, which requires no more than occasional interaction with supervisors and coworkers. [Patterson] must avoid occupations, which require interaction with members of the general public.

> (Doc. 15-2, at 24).

E.  S<small>TEP</small> F<small>OUR</small>

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess,* 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, the ALJ noted that Patterson has no past relevant work. (Doc. 15-2, at 28). Therefore, the ALJ moved on to step five.

F.  S<small>TEP</small> F<small>IVE</small>

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, he or she will not be considered disabled. 20 C.F.R. § 416.920(a)(4)(v).

The ALJ made vocational determinations that Patterson was 45 years old on the date the application was filed and was defined as a younger individual age 45-49 by the SSR. 20

C.F.R. § 416.963; (Doc. 15-2, at 29). The ALJ also noted that Patterson "has a limited education and is able to communicate in English" as considered in 20 C.F.R. § 416.964. (Doc. 15-2, at 29). The ALJ determined that upon consideration of these factors, Patterson's RFC, and the testimony of a VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." 20 C.F.R. §§ 416.969; 416.969(a); (Doc. 15-2, at 29). The ALJ specifically identified the occupations of a packing inserter, polish cleaner/small parts, and hand packer with positions ranging from 30,700 to 107,000 nationally. (Doc. 15-2, at 29-30).

As a result of the foregoing analysis, the ALJ determined that Patterson was not disabled and denied Patterson's applications for benefits. (Doc. 15-2, at 30).

IV.    **DISCUSSION**

On appeal, Patterson advances three main arguments. First, Patterson asserts that the ALJ's decision is constitutionally defective and should be reversed. (Doc. 21, at 5). Second, Patterson argues that the ALJ erroneously assigned only partial weight to the opinion of the consultative psychologist. (Doc. 21, at 5). Third, Patterson asserts that the ALJ failed to present a hypothetical question containing all of her limitations to the VE. (Doc. 21, at 5). In response, the Commissioner contends that substantial evidence supports the ALJ's decision and that the Court should reject Patterson's arguments given the deferential standard of review. (Doc. 26, at 2).

A. THE ALJ DECISION IS NOT CONSTITUTIONALLY DEFECTIVE

Patterson argues that the Commissioner serves a longer term than the President and is removable only for cause, which violated the separation of powers and rendered the ALJ's decision constitutionally defective. (Doc. 21, at 5). Specifically, Patterson argues that her constitutional rights were violated because the ALJ and the Appeals Council exercised power

that they did not lawfully possess due to the constitutionally defective delegation of power. (Doc. 33, at 8). In response, the Commissioner argues that any defect under the Appointments Clause of the Constitution, U.S. Const. Art. II. § 2, cl. 2, to the manner in which the ALJ was appointed was cured because the Acting Commissioner of Social Security ratified all ALJ appointments and approved them as his own under the Constitution. (Doc. 26, at 13); *see also* SSR 19-01p. Further, the Commissioner argues that even if the ALJ had been appointed by a tenure-protected Commissioner, Patterson failed to show that Section 902(a)(3)'s removal restriction caused the denial of her benefits claim. (Doc. 26, at 13).

Patterson relies on the recent Supreme Court decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), arguing that the Social Security Administration ("SSA") is unconstitutional and, thus, deprived Patterson of a valid administrative adjudicatory process. (Doc. 21, at 8). In *Collins*, a group of shareholders argued that the structure of the Federal Housing Finance Agency ("FHFA") violated the separation of powers, as it was led by a single director who could be removed by the President only for cause. 141 S. Ct. at 1770. The Supreme Court held that the tenure protection of the Director of the FHFA created pursuant to the Housing and Economic Recovery Act of 2008, violated the Separation of Powers doctrine. *Collins,* 141 S. Ct. at 1770. However, the separation of powers violation did not apply to the Acting Director because the Act did not explicitly place any restrictions on the President's ability to remove an Acting Director. *Collins,* 141 S. Ct. at 1783. The Court refused to invalidate the prior actions in their entirety, stating:

> All the officers who headed the FHFA during the time in question were properly *appointed.* Although the statute unconstitutionally limited the President's authority to remove the [FHFA's] confirmed Directors, there was no constitutional defect in the statutorily prescribed method of *appointment* to that office. As a result, there [was] no reason to regard any of the actions taken by the FHFA . . . as void.

11

*Collins,* 141 S. Ct. at 1787 (emphasis in original).

The Supreme Court concluded there was no constitutional defect in the method of appointment for the director, and the director was "properly *appointed*," so there was no reason to void any of the actions taken by the FHFA. *Collins,* 141 S. Ct. at 1787 (emphasis in original). In other words, there was "no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office." *Collins,* 141 S. Ct. at 1788. Consequently, any plaintiff seeking relief on separation of powers grounds would have to show that the restriction on the President's removal power caused harm. *Collins,* 141 S. Ct. at 1788-89. For example, the Supreme Court noted that there could be a compensable harm if the President "had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Collins,* 141 S. Ct. at 1789.

Here, Patterson argues the Commissioner's appointment and tenure were unconstitutional because of the removal provision, depriving the Commissioner of the ability to delegate decision-making to the ALJ and Appeals Council who considered Patterson's case. (Doc. 21, at 5). Applying the holding in *Collins,* it is clear that the provision for removal of the Commissioner of Social Security, 42 U.S.C. § 903(a)(3), violates separations of powers. *Collins,* 141 S. Ct. at 1787. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 42 U.S.C. § 903(a)(3). This statutory clause suffers from the same defect as the removal provision at issue in *Collins,* and thus, violates separation of powers. *See Collins,* 141 S. Ct. at 1783; *see also* Office of Legal Counsel, *Constitutionality of*

*the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021). However, nonetheless, Patterson has failed to demonstrate that her case should be remanded and revered pursuant to *Collins* for the following reasons.

First, the removal provision does not render the Commissioner's appointment invalid and thus, does not automatically void the ALJ's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void."). According to Patterson, the ALJ based his decision under regulations that were promulgated by then-Acting Commissioner Nancy Berryhill ("Berryhill") "when he had no constitutional authority to issue those rules." (Doc. 21, at 9). Following his confirmation by the Senate, Saul was sworn in as Commissioner of the SSA on June 17, 2019, and the ALJ issued his decision on December 19, 2019. (Doc. 21, at 8 n.2). The Supreme Court's rationale in *Collins* appears to undermine Patterson's position that the Commissioner acted outside his constitutional authority when he delegated authority to the ALJ to decide Patterson's disability claim. (Doc. 21, at 8-9). ALJ Timothy Wing held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Berryhill. (Doc. 26, at 16).

Additionally, because an Acting Commissioner does not have the same removal restriction as the Commissioner and because the ALJ was properly appointed, Patterson's argument is not persuasive in this case. *See Collins*, 141 S. Ct. at 1781 (because removal restrictions of the FHFA applied only to the Director, "any constitutional defect in the

provision restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" by actions of an Acting Director who enjoyed no such protections); *see also Boger*, 2021 WL 5023141, at *3 n.4 (finding that "Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because ALJ Howard was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion.") (*citing* 42 U.S.C. § 902(b)(4); *Collins*, 141 S. Ct. at 1783; *United States v. Eaton*, 169 U.S. 331, 343 (1898)).[3] As the Commissioner points out, the designation of then-Acting Commissioner permitted Berryhill to exercise the authority of the officer of the Commissioner, including the appointment of ALJs. (Doc. 26, at 16). Berryhill accomplished this retroactively by ratifying prior ALJ appointments in July 2018. *See* SSR 19-1p. Patterson offers no support for her apparent position that Berryhill's acting status left her unable to perform these duties of Commissioner.

Secondly, Patterson has not demonstrated that the unconstitutionality of 42 U.S.C. § 903(a)(3) inflicted compensable harm. *See Boger v. Kijakazi*, No. 1:20-CV-00331, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 28, 2021) (finding that the ALJ's decision was not constitutionally defective where "Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional

---

[3] Other courts determining the issue of traceability for purposes of jurisdiction have disagreed with this position as it relates to the Social Security Administration. *See Dante v. Saul*, No. 20-CV-0702, 2021 WL 2936576, at *8 (D.N.M. July 13, 2021) (finding that "the plain language of § 902(a) suggests that the Presidential removal restrictions may apply not only to a Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an Acting Commissioner"), *but see Collins,* 141 S. Ct. at 1783 (noting that "we generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away'" when discussing whether an acting director is a confirmed director) (quoting *Shurtleff v. U.S.*, 189 U.S. 311, 316 (1903)).

removal provision[,]" but "offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); *see also Robinson v. Kijakazi*, No. 1:20-CV-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) (same); *Amanda B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00434, 2021 WL 4993944, at *9–10 (D. Or. Oct. 26, 2021) (concluding that "the authorities cited by Plaintiff in her supplemental briefing do not affect the disposition of this matter" where Plaintiff "does not allege 'the SSA Commissioner took any action that is in any way related to the ALJ's decision' or the decision by the Appeals Council.").

In *Collins*, the Court found it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788–89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Collins,* 141 S. Ct. at 1774. The Third Amendment was not subject to full judicial review and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *Collins,* 141 S. Ct. at 1785, 1789.

By contrast, in this case, the action challenged by Patterson is the ALJ's decision denying benefits. Patterson has alleged no direct action by former Commissioner Andrew Saul himself, and no involvement—or even awareness—by the former President in the ALJ's

decision. *Cf. Collins,* 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Patterson has made no clear allegation that Commissioner Saul's unconstitutional tenure resulted in compensable harm to him. Here. the ALJ's decision was based upon an uncontested factual record and the application of established law, including caselaw, which generally cannot be changed by the Commissioner. There is no allegation even suggesting a direct nexus between the adjudication of Patterson's disability claim by the ALJ and the alleged separation of powers violation in the removal statute that applies to the Commissioner. Patterson's allegations merely express general dissatisfaction with the outcome of the adjudication of her SSA disability claim.

Accordingly, Patterson has not alleged any connection between the unconstitutional limit on the Commissioner of Social Security's removal and the ALJ's decision denying Patterson benefits. *See Decker Coal Co. v. Pehringer,* 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Thus, while the removal clause in § 902(a)(3) violates separation of powers, it does not independently require the Court to reverse the ALJ's decision absent a showing of compensable harm.

## B. The ALJ did not Err in Their Evaluation of Opinion Evidence

Patterson argues that the ALJ erroneously assigned only "partial weight" to the opinion of non-treating psychologist Andrew Cole, Psy.D. ("Dr. Cole"). (Doc. 21, at 11).

16

Patterson asserts that "had Dr. Cole's opinion been properly credited, the ALJ would have found [her] disabled." (Doc. 21, at 11). The Commissioner argues that the ALJ correctly applied the controlling regulatory framework when evaluating Dr. Cole's opinion and that Patterson is merely a request to reweigh the evidence. (Doc. 26, at 31).

With regard to the ALJ's assessment of the consultative evaluators' opinions, the ALJ fulfilled his obligation to explain what weight he afforded to a medical opinion and why he assigned the weight as she did. *See* 20 C.F.R. § 416.927(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). The Third Circuit has ruled that the ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "[RFC]" is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, at *2. When determining an individual's RFC, the ALJ must consider all the evidence of the record including medical signs and laboratory findings, medical source statements, and a claimant's medical history. SSR 96-8p, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential,

and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-CV-1768, 2018 WL 4189661, at *3 (M.D. Pa. Apr. 13, 2018).

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b). In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 416.927(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 416.927(a)(2) (defining treating source); 20 C.F.R. § 416.927(c)(2) (explaining what is required for a source's opinion to be controlling). The Commissioner's regulations, read in conjunction with SSR 06-3p, require that the opinion evidence of record based on the following factors: how long the source has known, and how frequently the source has seen the claimant; how consistent an opinion is with other evidence; the degree to which the source presents relevant evidence to support the opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the claimant's impairments; and any other relevant factors. 20 C.F.R. § 416.927(c). Furthermore, such determinations must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422,

429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Patterson argues that the ALJ's reasoning for rejecting Dr. Cole's opinion based on Patterson's "conservative treatment" was erroneous because there were "more than moderate" findings and that her years of treatment for psychiatric evaluation, medication, and therapy is not conservative. (Doc. 21, at 12; Doc. 33, at 2). The Regulations require the ALJ to "consider" these factors. 20 C.F.R. § 404.1529. However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06–3p. *See also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). In other words, the word "consider" has been construed by the Commissioner and courts to not require citation or written explanation. *Phillips,* 91 F. App'x at 780. Thus, an ALJ does not need to cite each factor considered in the analysis. *See Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors," they do not require "an exhaustive factor-by-factor analysis.").

Moreover, while the ALJ must consider Patterson's subjective symptoms allegations, the ALJ is not required to accept them. *See* 20 C.F.R. § 404.1529. If the ALJ identifies factors that contradict those statements, then the ALJ may reject them. *See* 20 C.F.R. § 404.1529. The Regulations allow the ALJ to find that conservative  treatment, an absence of complaints in medical records, normal mental status findings and average IQ, and multiple medical expert opinions contradict Plaintiff's statements to the agency and the Court. *See* 20 C.F.R. § 404.1529. Patterson had diagnosed medical impairments, but those impairments do not mean

she is disabled. *See* SSR 16-3P; *see also Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (There is no "presumption that a mere diagnosis ... renders an applicant eligible for benefits under the Social Security Act"); *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) (affirming ALJ decision wherein conservative treatment contradicted the degree of symptom severity alleged by claimant); *Fligger v. Berryhill*, No. 17-CV-1187, 2018 WL 6338328, at *1 (W.D. Pa. Sept. 20, 2018) (affirming SSR 16-3P consistency analysis where "[t]he ALJ considered the relatively conservative treatment Plaintiff had received for his condition, and the fact that his treatment included significant gaps."). Patterson bears the burden to produce evidence that demonstrates she is disabled, and the only evidence that she was disabled are statements made to the agency and the Court, which the ALJ properly discounted. 42 U.S.C.A. § 1382c(a)(3)(H)(i). Patterson failed to produce credible evidence of disability.

Dr. Cole evaluated Patterson on April 1, 2015, and conducted a mental status examination. (Doc. 15-8, at 71). Dr. Cole reported that Patterson was hospitalized a number of years ago for bipolar disorder, attended outpatient services at Community Counseling Services ("CCS"), and still occasionally attends psychiatric appointments at CCS, but no longer attends counseling. (Doc. 15-8, at 71). Dr. Cole stated that Paterson "described recurrent depressive episodes, including dysphoric moods, hopelessness, irritability, fatigue, worthlessness, diminished self-esteem, concentration problems, and social withdrawal." (Doc. 15-2, at 71). Regarding Patterson's current functioning, Dr. Cole noted that Patterson self-reported a history of suicidal ideation, bipolar disorder, psychotic symptoms, and symptoms of panic, mania, or thought disorder; However, when asked specifically about her psychiatric symptomatology, Patterson denied any history of manic, hypomanic, or psychotic symptoms. (Doc. 15-8, at 71-72). Dr. Cole reported that during his examination, Patterson

"was mostly cooperative in demeanor," and that "[h]er manner of relating, social skills, and overall presentation were poor. [Patterson] was notably irritable during the interview. However, she appeared to become more comfortable toward the end of the interview." (Doc. 15-8, at 72).

Dr. Cole's evaluation findings included: normal and appropriate posture, motor behavior, and eye contact; fluent and clear speech; no evidence of hallucinations, delusions, or paranoia in the evaluation setting; agitated affect; dysthymic mood; clear sensorium; intact attention and concentration; mildly impaired recent and remote memory skills due to limited intellectual functions; below average overall intellectual functioning; poor insight; and fair judgment. (Doc. 15-8, at 72-73). In his medical source statement, Dr. Cole reported that Patterson had moderate limitations in: (i) understanding, remembering, and carrying out complex instructions and making judgments on complex work-related decisions; and (ii) responding appropriately to usual work situations and changes in a routine work setting. (Doc. 15-8, at 75-76). In addition, Dr. Cole reported that Patterson had marked limitations in interacting appropriately with the public, supervisor(s), and co-workers. (Doc. 15-8, at 76). Based on his examination, Dr. Cole diagnosed Patterson with major depressive disorder, generalized anxiety disorder, rule out bipolar disorder, and rule out general personality disorder." (Doc. 15-8, at 74). Dr. Cole recommended individual psychological therapy and psychiatric intervention. (Doc. 15-8, at 74).

In his decision, the ALJ stated that "Dr. Cole's opinion regarding [Patterson's] moderate limitations, are consistent with, and supported by, the longitudinal record, which reflects no more than moderate finding on mental status examination, and conservative mental health treatment, with no referral for any more intensive treatment." (Doc. 15-2, at

27). The ALJ explained that Dr. Cole found that Patterson had marked limitations in social functioning, but this was contradicted by the evidence of record during the relevant period, "which reflects conservative treatment, with no evidence that [Patterson] was required, or been referred for any group therapy, partial hospitalization program, inpatient hospitalization, or other form of intensive mental health intervention during the relevant time." (Doc. 15-2, at 27). For example, treatment notes from 2018 reflect that Patterson was feeling well with present medication, denied any delusions, hallucinations, or paranoia, and reported stable mood, clear thought processes, and no gross memory deficits. (Doc. 15-11, at 46). Thus, the ALJ afforded Dr. Cole's opinion only "partial weight." (Doc. 15-2, at 27).

Patterson does not present evidence in the record to demonstrate severity to warrant a disability finding. The question is not whether Patterson demonstrated some evidence that could support a finding of disability. *Kirk v. Colvin,* No. 4:13-CV-02735, 2015 WL 5915748, at *13 (M.D. Pa. Oct. 8, 2015). The question is whether the ALJ reasonably concluded that the record in totality failed to support Dr. Cole's evaluation and Patterson's claims. *Kirk,* 2015 WL 5915748, at *13. Accordingly, the ALJ fulfilled his obligation to explain what weight he afforded to Dr. Cole's medical opinion and why he assigned the weight as he did. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

Additionally, Patterson asserts that the Court should not uphold the ALJ's decision because it violates the *Chenery* doctrine. (Doc. 33, at 3-4) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) ("The grounds upon which an administrative order must be

judged are those upon which the record discloses that its action was based"). However, although the Court may not affirm based on "post-hoc rationalizations," courts have a "responsibility to uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974)). Even if the ALJ had erred in considering Patterson's medication and treatment, "whether the error is harmless depends on whether the other reasons cited by the ALJ in support of [the] credibility determination provide substantial evidence for her decision." *Brumbaugh v. Colvin*, 3:14-CV-888, 2014 WL 5325346, at *16 (M.D. Pa. Oct. 20, 2014).

The ALJ recognized that Patterson was previously hospitalized in 2008, due to suicidal and homicidal ideations, and that Patterson reports ongoing complaints of auditory hallucinations and receives regular treatment for her mental impairments. (Doc. 15-2 at 25, 27). However, the ALJ found that the longitudinal evidence does not support Patterson's allegations concerning the intensity, persistence, and limiting effects of her symptoms. (Doc. 15-2, at 27). The ALJ stated that the record reflects that Patterson can ignore her hallucinations, her depression is controlled with the use of medication, Patterson's "mental status examinations reflect no more than mild to moderate findings," and that "there is no indication that [Patterson's] treatment has changed or required referral to any more intensive mental health intervention during the relevant time." (Doc. 15-2, at 27).

Patterson's mental health treatment records reflect that she visited a psychiatrist at CCS two times in 2015, three times in 2016, and five times in 2017 and 2018. (Doc. 15-9, at

2, 59, 65). CCS records from 2018 and 2019 describe improvement in Patterson's mental health. (Doc. 15-11, at 45-51). During her consultative evaluation with Dr. Cole, Patterson admitted that she still occasionally attends psychiatric appointments at CCS, but no longer attends counseling. (Doc. 15-8, at 71). During the January 26, 2017, administrative hearing, the ALJ asked Patterson if she has been hospitalized for any mental health issues since her 2008 hospitalization, to which Patterson responded: "No." (Doc. 15-3, at 36).

The ALJ is entitled to deference with regard to credibility determinations. *See Szallar v. Comm'r Soc. Sec.*, No. 15-CV-1776, 2015 WL 7445399, at *1 (3d Cir. Nov. 24, 2015) ("the ALJ's assessment of his credibility is entitled to our substantial deference") (citing *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir. 2014)). Moreover, "[n]either the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). Thus, the ALJ did not reject Dr. Cole's opinion for erroneous reasons and the Court does not remand on these grounds.

C. The ALJ did not Err in Their Presentation of a Hypothetical Question to the Vocational Expert

Patterson's third argument asserts that the ALJ's hypothetical question presented to the VE improperly omitted credibly established limitations assessed by Dr. Cole. (Doc. 21, at 15). At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work by posing a hypothetical question(s) to the VE. *Chrupcala v. Heckler*, 829 F.2d 1269, 176 (3d Cir. 1987); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004). "A hypothetical question posed to the [VE] must reflect all of the claimant's impairments that are supported by the record;

otherwise the question is deficient and the [VE]'s answer to it cannot be considered substantial evidence. *Chrupcala*, 829 F.2d at 1276; *see also Rutherford*, 399 F.3d at 554; *Ramirez*, 372 F.3d at 552-55. The ALJ, however, is not required to submit to the [VE] every impairment alleged by a claimant. *Rutherford*, 399 F.3d at 554. "[S]uch references to 'all impairments' encompass only those that are medically established." *Rutherford*, 399 F.3d at 554. Thus, the question posed to the ALJ must accurately convey to the VE all of a claimant's credibly established limitations. *Rutherford*, 399 F.3d at 554 (quoting *Plummer*, 186 F.3d at 431).

During the January 26, 2017, administrative hearing, the ALJ posed two hypothetical questions to the VE. The first hypothetical question asked if any work is available to a person with Patterson's age, education, and background that would be limited to: "occupations requiring no more than simple routine, repetitive tasks not performed in a fast-paced production environment; involving only work-related decisions; and in general, relatively few workplace changes; and would also be limited to occupations which would require no more than occasional interaction with supervisors and coworkers; but would need to avoid occupations which would require interaction with members of the general public." (Doc. 15-3, at 47). The VE provided several examples of possible unskilled work, including filling, wrapping, and packing workers, small parts polisher and cleaner, and hand packers. (Doc. 15-3, at 47). The second hypothetical question limited Patterson to the added limitations: "assuming corroboration of the medical records and other records that would require breaks and absences at will, as well as time off task at will, that could exceed 15 percent or more of a given workweek or work month." (Doc. 15-3, at 48). The VE responded "No" to the second hypothetical question. (Doc. 15-3, at 48).

The ALJ did not err in his hypothetical question to the VE. Patterson argues that the hypothetical questions erroneously omitted the limitations assessed by Dr. Cole, which the ALJ should have adopted. (Doc. 21, at 16). Patterson contends that Dr. Cole's assessed limitations, which if credited, would have resulted in a finding of disability. (Doc. 21, at 16). The ALJ was not required to include all of the limitations assessed by Dr. Cole. The ALJ was only required to include all of Patterson's credibly established limitations. *See Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 431. Further, as mentioned *supra*, the Court has found that the ALJ properly discounted the opinion of Dr. Cole. Therefore, because the Court finds that the ALJ's hypothetical questions posited to the VE adequately set forth all of Patterson's credibly established limitations, the Court finds that the ALJ committed no error as to this issue.

V.   **CONCLUSION**

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Patterson disability benefits and directs that **FINAL JUDGMENT BE ENTERED** in favor of the Commissioner and against Patterson. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

BY THE COURT:

Dated: January 18, 2022                *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**